**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**ADAM POWELL,**

     **Plaintiff,**

                                      **Civil Action 2:20-cv-02118**

     **v.**                          **Magistrate Judge Elizabeth P. Deavers**

**THE BARTLETT MEDICAL CLINIC
AND WELLNESS CENTER,** *et al.*,

     **Defendants.**

## OPINION AND ORDER

Plaintiff, Adam Powell, an Ohio resident proceeding here *pro se*, brings this action asserting claims under the Title III of the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12101 *et seq.,* against Columbus Medical Enterprises, LLC d/b/a The Bartlett Medical Clinic and Wellness Center ("the Clinic") and Heather K. Bartlett, M.D. ("Dr. Bartlett") (collectively, "Defendants").  With the consent of the parties (ECF No. 26), pursuant to 28 U.S.C. § 636(c), this matter is before the Court for consideration of Plaintiff's Motion for Leave to File a Second Amended Complaint (ECF No. 30), Defendants' Motion to Dismiss (ECF No 24), Plaintiff's motion for appointment of counsel (ECF No. 29 as supplemented by ECF No. 33), Plaintiff's Motion Requesting Review by the Attorney General or Designee (ECF No. 34), and Plaintiff's motion for a protective order (ECF No. 35).  For the following reasons, the Motion to Dismiss (ECF No. 24) is **GRANTED**.  Further, the Court resolves the remaining motions as follows.

## I.     BACKGROUND

Plaintiff initiated this case on April 27, 2020, when he moved for leave to proceed *in forma pauperis.* (ECF No. 1.) Following an initial screen by the Court, the Complaint was filed on May 4, 2020. (ECF No. 4.) On July 30, 2020, Plaintiff filed an Amended Complaint. (ECF No. 16.)[1]

In his Amended Complaint, Plaintiff alleges the following. In May 2017, Plaintiff began seeing Dr. Bartlett in her capacity as a general practitioner. (ECF No. 16 at ¶ 17.) He primarily sought her care for maintenance of his ADHD medications. (*Id*. at ¶ 18.) On March 23, 2018, Plaintiff received an email setting forth new clinic policies regarding the treatment of ADHD. (*Id*. at ¶ 19.) Plaintiff was alarmed by this email and found it disparaging to his condition but concluded the policies were "mostly inapplicable to him." (*Id.* at ¶ 20.)

In July 2019, after treating with Dr. Bartlett for a little over two years, Plaintiff requested to resume treatment with a previous ADHD medication and dosage that had been prescribed by multiple psychiatrists and that he had taken for years with good results. This request led to significant problems. (*Id*. at ¶ 21.) After months of struggling, Plaintiff sent an email to Dr. Bartlett describing the difficulties he was experiencing and voicing his frustration with the situation. (*Id*. at ¶ 25.) Dr. Bartlett responded via email, expressing concern about the "odd

---

[1]In conjunction with filing his Amended Complaint, Plaintiff also sought leave to file an "affidavit" under seal to "better explain[] the circumstances and events in question." (ECF No. 15 at 1.) Based on Plaintiff's representations that his proposed filing contained personal medical information, the Court granted the motion by Order dated August 18, 2020 (ECF No. 23) and the document was filed under seal on September 4, 2020, as ECF No. 25. Although characterized by Plaintiff as an "affidavit," it does not appear that Plaintiff swore to its truthfulness before a notary. Additionally, the document does not appear to be an unsworn declaration because it does not state that it was signed under penalty of perjury as required by 28 U.S.C. § 1746. Nevertheless, consistent with Plaintiff's stated intention and its obligation to construe *pro se* filings liberally, the Court will consider the document's allegations as "further explanation of the circumstances and events in question" as set forth in the Amended Complaint. *See* ECF No. 15.

wording and sentiment" expressed in Plaintiff's email and, according to Plaintiff, suggested a drug test by way of a "veiled threat." (*Id.* at ¶ 26.) Eventually, the physician-patient relationship was terminated in March 2020. (*Id.*)

After the termination of the physician-patient relationship, Plaintiff also was terminated from enrollment in the monthly-subscription service and ran out of medication. (*Id.* at ¶ 27.) He spent the next month once again struggling with the symptoms he has struggled with all his life without appropriate treatment. (*Id.* at ¶ 28.). At the time the original complaint was filed, ADD/ADHD was the only condition for which Dr. Bartlett set forth a specific policy on her website. (*Id.* at ¶¶ 22, 23.)

Plaintiff seeks an injunction prohibiting the Defendants from engaging in further discriminatory practices against people with disabilities, and any other relief permitted under the ADA. (ECF No. 16 at 11.) Further, he seeks unspecified monetary damages as well, citing Ohio Revised Code § 4112.99. (*Id.*)

## I.    PRELIMINARY MOTIONS

Plaintiff has moved for leave to file a Second Amended Complaint. He has framed this motion, in part, as contingent upon his requests for appointment of counsel. Accordingly, the Court will address the issue of the appointment of counsel briefly at the outset.

### A. Motions for Appointment of Counsel

Plaintiff has moved for appointment of counsel under various theories. For example, Plaintiff suggests that his request could be viewed as a request for an accommodation under the ADA. *See* ECF No. 29 at ¶ 5. To the extent that this may be so, Plaintiff has not established a need for counsel based on his alleged disability.

The ADA "does not carry with it, for claims brought thereunder, any inherent or absolute right to counsel." *Stone v. Town of Westport*, No. 3:04CV18 (JBA), 2007 WL 9754412, at *1 (D. Conn. Feb. 23, 2007). To the extent Plaintiff is seeking an accommodation for his alleged condition, in the form of appointed counsel, to enable him full access to the courts,[2] even assuming that the ADA provides for such accommodation in the form of appointed counsel in this civil case, and that he qualifies for ADA protection, Plaintiff's motion under this theory is not well-taken. Despite Plaintiff's explanations throughout the record of the difficulties presented by his alleged condition, Plaintiff has managed his litigation of this case quite effectively, asserting his requests for relief clearly, responding in appropriate form to the motion to dismiss, and meeting deadlines. This indicates to the Court that Plaintiff is in the same position as any person proceeding *pro se* and without any legal education. In short, the Court is not convinced that the appointment of counsel would accommodate Plaintiff's alleged disability more than it simply would accommodate "his "'unrepresentedness' and lack of legal education." *Id.* Accordingly, Plaintiff's motion for the appointment of counsel as an accommodation under the ADA is **DENIED.**

Plaintiff also appears to seek the appointment of counsel pursuant to 28 C.F.R. § 36.501[3] through his motion for review by the Attorney General. That Regulation provides that the Court,

---

[2] *See also Tennessee v. Lane*, 541 U.S. 509 (2004) (discussing the ADA's Title II protection against discrimination "in such critical areas as . . . access to public services," including "the right of access to the courts")

[3] In its entirety, the Regulation reads:

(a) General. Any person who is being subjected to discrimination on the basis of disability in violation of the Act or this part or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of section 303 of the Act or subpart D of this part may institute a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order. Upon

in its discretion, may "permit the Attorney General to intervene in the civil action if the Attorney General or his or her designee certifies that the case is of general public importance." The Attorney General has not sought to intervene in this case, making this Regulation inapplicable here. Accordingly, Plaintiff's motion for appointment of counsel under this theory also is **DENIED.**

Finally, and more generally, Plaintiff is proceeding *in forma pauperis* under 28 U.S.C. § 1915(e). Although this Court has statutory authority under that statutory provision to appoint counsel in a civil case, appointment of counsel is not a constitutional right. *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (citation omitted). Rather, "[i]t is a privilege that is justified only by exceptional circumstances." *Id.* at 606. The Court has evaluated whether such exceptional circumstances exist in this case and, for the reasons more fully explained below, determines that the appointment of counsel is not warranted. Accordingly, Plaintiff's motions for appointment of counsel by virtue of his indigent status are **DENIED.**

### B. Motion for Leave to File a Second Amended Complaint

#### 1. Legal Standard

Pursuant to Rule 15(a), the Court should freely grant a party leave to amend his or her pleadings when justice so requires. Fed. R. Civ. P. 15(a). Rule 15(a) sets forth "a liberal policy of permitting amendments to ensure the determination of claims on their merits." *Oleson v. United States*, 27 F. App'x 566, 569 (6th Cir. 2001) (internal quotations omitted). As the United States

---

timely application, the court may, in its discretion, permit the Attorney General to intervene in the civil action if the Attorney General or his or her designee certifies that the case is of general public importance. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the civil action without the payment of fees, costs, or security….

28 C.F.R. § 36.501

Court of Appeals for the Sixth Circuit has noted, "[f]actors that may affect [a Rule 15(a)] determination include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment." *Seals v. Gen. Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008).

A court may deny a motion for leave to amend for futility if the amendment could not withstand a motion to dismiss. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005). In addition, when considering the issue of prejudice, a court must ask whether allowing amendment would "require the opponent to expend significant additional resources to conduct discovery or prepare for trial" or cause considerable delay in resolving the dispute. *Phelps v. McClennan*, 30 F.3d 658, 662–63 (6th Cir. 1994).

## 2. Analysis

In seeking leave to amend, Plaintiff explains that, as this case has evolved, he has learned that certain matters raised in his earlier filings are "unlikely to succeed and only serve to 'muddy the waters' of the case." (ECF No. 30 at ¶ 2.) He notes that he has requested the appointment of counsel[4] and explains that, given the deadline for motions to amend, his intention is to "reserve the right to amend the Complaint again" whether such amendment ultimately is undertaken on his own or by counsel. (*Id*. at 1, ¶ 7.) He states that he "does not anticipate the addition of any parties, or the

---

[4] As noted in Plaintiff's motion, he sought both representation from Disability Rights Ohio ("DRO") and the appointment of counsel by this Court in the event DRO declined his request for representation. (ECF No. 30 at ¶ 1.) In his supplemental filing seeking the appointment of counsel, Plaintiff confirmed that DRO had declined to represent him. (ECF No. 33.) Plaintiff filed his motion for review by the Attorney General or Designee as an alternative to his request for the appointment of counsel "to allow the Court to grant whichever motion it sees fit." (ECF No. 34 at 1.)

addition of any new Questions of Law and instead assumes that the Second Amended Complaint will be more concise, focusing on the actual questions of law relevant to the case at Bar (the ADA and the O.R.C. anti-discrimination statutes)." (*Id*. at ¶ 8.) He anticipates being able to file a Second Amended Complaint no later than January 2021. Defendants oppose Plaintiff's motion on grounds of futility.

As indicated, Plaintiff's motion for leave to amend is, in part, a motion for an extension of the amendment deadline based on his request for the appointment of counsel. In that sense, it is more aptly described as a placeholder rather than a substantive motion seeking leave to amend. Because Plaintiff's request for counsel has been denied, it is not a basis upon which to grant such an extension.

To the extent that Plaintiff is making a more substantive request, he has not attached a copy of his proposed amended pleading. Although that fact, standing alone, may not be a sufficient ground on which to deny Plaintiff's motion, his failure to attach a proposed pleading is complicated by the fact that his description of his proposed amendments is vague at best. By his own admission, Plaintiff is not seeking to add any parties or claims. Rather, he seeks to amend to file a more "concise" or focused pleading. He describes his need to "focus[] on the actual questions of law." *See* ECF No. 30 at ¶ 8. He does not state a need to set forth additional factual allegations.

Fed. R. Civ. P. 8(a) requires only a short and plain statement of the claims being asserted showing that plaintiff is entitled to relief. Accordingly, Plaintiff does not need to include the unspecified questions of law he notes or, for that matter, anything else in the way of legal arguments, or citations to cases or other authorities. He need only give Defendants fair notice of what his claims are and the grounds upon which they rest. *See Golf Village N. LLC v. City of Powell, Ohio*, No. 19-3920, 2020 WL 5049364, at *4 (6th Cir. Aug. 27, 2020). By Plaintiff's

own explanation, he has done that in his Amended Complaint. Accordingly, the motion for leave to file a second amended complaint is **DENIED.**

## II. DEFENDANTS' MOTION TO DISMISS

Defendants have moved to dismiss on multiple grounds. First, they contend that Plaintiff is asserting a state law medical malpractice claim under the guise of an ADA Title III claim, and that, because diversity is lacking here, this Court is without subject matter jurisdiction over such a claim. Further, they argue that, to the extent Plaintiff brings a medical malpractice claim, he fails to state such a claim. Additionally, Defendants assert that, to the extent Plaintiff is bringing an ADA Title III claim, such a claim fails for lack of standing and because Plaintiff has failed to state a prima facie case or state a claim under the ADA. Finally, Defendants contend that Plaintiff has not stated a claim under any of the state or local statutes he cites. As set forth below, the Court agrees that Plaintiff's Amended Complaint is subject to dismissal.

### A. Legal Standards

Defendants have moved to dismiss, in part, pursuant to Federal Rule of Civil Procedure 12(b)(1). "When the defendant challenges the existence of subject-matter jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists." *Lewis v. Whirlpool Corp.,* 630 F.3d 484, 487 (6th Cir. 2011) (citing *Nichols v. Muskingum Coll.,* 318 F.3d 674, 677 (6th Cir. 2003) ).

The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Mitchell v. BMI Fed. Credit Union*, 374 F. Supp. 3d 664, 667 (S.D. Ohio 2019) (citing *Wayside Church v. Van Buren County*, 847 F.3d 812, 816–17 (6th Cir. 2017)). "A facial attack 'questions merely the sufficiency of the pleading,' *Gentek Bldg Prods., Inc. v.*

*Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) ), and requires the district court to 'take[ ] the allegations in the complaint as true.'" *Id. (*quoting *Wayside Church*, 847 F.3d at 816-17). A factual attack, however, "raises a factual controversy requiring the district court 'to weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Wayside Church*, 847 F.3d at 817 (quoting *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330). "The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986)." *Mitchell*, 374 F. Supp. 3d at 667. The Court may allow "affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* (quoting *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

Defendants also move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd.*, *P'ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) (emphasis in original).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."  *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice.  *Flex Homes, Inc. v. Ritz–Craft Corp of Mich., Inc*., 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

In considering whether this facial plausibility standard is met, a Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning*

*Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). Additionally, the Court must construe *pro se* complaints liberally. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Iqbal*, 556 U.S. at 677.

It is with these standards in mind that the Court will consider Defendants' Motion.

### B.  Analysis

Construing Plaintiff's *pro se* Amended Complaint liberally as the Court is required to do, it appears that he is attempting to bring a claim under Title III of the ADA.[5]  *See* ECF No. 16 at ¶ 1 ("This action is brought by the Plaintiff asking the Court to enforce compliance with Title III of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. Part 36 …."); *see generally Id.* at ¶¶ 1 and 2. Accordingly, the Court will begin its analysis there.  Further, because Plaintiff's standing to bring such a claim is a threshold issue, the Court will address that issue first.

### 1. Plaintiff's Standing to Assert a Claim Under ADA Title III

Title III of the ADA "prohibits discrimination on the basis of disability in public accommodations operated by private entities." *Sandison v. Michigan High Sch. Athl. Ass'n, Inc.,* 64 F.3d 1026, 1036 (6th Cir. 1995).  A private plaintiff suing under Title III of the ADA can obtain injunctive relief, but not compensatory damages. *E.F. by Fry v. Napoleon Cmty. Sch.,* No. 12-15507, 2019 WL 4670738, at *8 (E.D. Mich. Sept. 25, 2019) (citing 42 U.S.C. § 12188; 28 C.F.R. 36.504); *see also Abeyta v. Stonecrest Med. Ctr.,* No. 3:18-CV-0386, 2018 WL 3472820,

---

[5] Plaintiff also invites the Court to consider whether any of his allegations indicate a violation of the Affordable Care Act ("ACA").  *See* ECF No. 16 at ¶ 2. Such a cursory reference to a statute is insufficient to raise any claim in reliance on it and the Court will not endeavor to uncover claims for Plaintiff.

at *3 (M.D. Tenn. July 18, 2018) (Title III authorizes only injunctive relief, not monetary damages, to successful plaintiffs).  Further, as an initial matter, a private party must establish standing to seek injunctive relief under the ADA.  *Davis v. Flexman*, 109 F. Supp. 2d 776, 783 (S.D. Ohio 1999) (citations omitted).

Plaintiff's Amended Complaint appears to seek injunctive relief under ADA Title III.  *See* ECF No. 16 at 11 ("Plaintiff seeks an injunction prohibiting the Defendant from engaging in further discriminatory practices against people with disabilities, and any other relief permitted under the ADA *et al*.").  Accordingly, the question here is whether Plaintiff has established standing to obtain the relief he seeks.

There is no question that "'[f]ederal courts are courts of limited jurisdiction.'" *In re: 2016 Primary Election*, 836 F.3d 584, 587 (6th Cir. 2016) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)).  "Before they may act, they must ensure their power to act.  One elemental precondition for acting is a 'case[ ]' or 'controvers[y].'" *Id.* (quoting U.S. Const. art. III, § 2).  A plaintiff with standing is a "basic precondition" of this requirement.  (*Id.*) (citing *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The Sixth Circuit Court of Appeals described the requirements of Article III standing, within the context of an ADA Title III claim, as follows:

> To satisfy Article III standing, a plaintiff must demonstrate that (1) he "suffered an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical' "; (2) the injury is " 'fairly traceable to the challenged action of the defendant' "; and (3) it is likely " 'that the injury will be redressed by a favorable decision.' " *Id.* (quoting *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130).  The injury inquiry is twofold where a plaintiff requests injunctive relief, as it requires plaintiff to show both "past injury and a real and immediate threat of future injury." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013); *see also Gaylor*, 582 F. App'x at 579 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)) ("The 'threat' of a

prospective injury must be real and immediate and not premised upon the existence of past injuries alone.").

*Mosley v. Kohl's Dep't Stores, Inc*., 942 F.3d 752, 756 (6th Cir. 2019).

Defendants contend that Plaintiff lacks standing here because he has not alleged a real and immediate threat of future injury. The Sixth Circuit addressed this specific issue in *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 580 (6th Cir. 2014), explaining as follows:

> This Court has not specifically addressed the pleading requirements for demonstration of the requisite threat of future injury within the context of a Title III ADA public accommodation claim for injunctive relief. But we agree with those circuits that have considered the issue and concluded that a plaintiff demonstrates the requisite threat of future injury where he establishes (1) a plausible intent to return to the noncompliant accommodation or (2) that he would return, but is deterred from visiting the noncompliant accommodation because of the alleged accessibility barriers. *See, e.g., Kreisler v. Second Ave. Diner Corp.,* 731 F.3d 184, 188 (2d Cir. 2013); *Scherr v. Marriott Int'l, Inc.,* 703 F.3d 1069, 1074 (7th Cir. 2013); *Daniels v. Arcade, L.P.,* 477 Fed.Appx. 125, 130 (4th Cir. 2012); *Camarillo v. Carrols Corp.,* 518 F.3d 153, 157–58 (2d Cir. 2008); *D'Lil v. Best W. Encina Lodge & Suites,* 538 F.3d 1031, 1037 (9th Cir. 2008); *Tandy v. City of Wichita,* 380 F.3d 1277, 1284 (10th Cir. 2004); *Steger v. Franco, Inc.,* 228 F.3d 889, 892 (8th Cir. 2000).

*Id.*

"The question of plausible intent to return to the accommodation is resolved by examining a plaintiff's allegations and any inferences that follow." *Tokmenko v. MetroHealth Sys.*, No. 1:18CV2579, -- F. Supp. 3d --, 2020 WL 5629093, at *5 (N.D. Ohio Sept. 21, 2020) (citing *Mosley*, 942 F.3d at 759). A plaintiff is "not required to provide a definitive plan for returning to the accommodation itself to establish a threat of future injury." *Id*. (citing *Mosley*, 942 F.3d at 760). Further, a Plaintiff is "not required to have visited the accommodation more than once." *Id*. (citing *Mosley*, 942 F.3d at 760). "Vague and conclusory allegations that a plaintiff intends to return to a location, however, are insufficient to maintain an ADA claim." *Saar v. Tanger Factory Outlet Centers, Inc.*, No. 1:17-CV-41, 2018 WL 387962, at *2 (W.D. Mich. Jan. 12,

2018) (citing *Bowman v. Kisan, LLC*, 2014 WL 6605605 at *5 (M.D. Tenn., Nov. 19, 2014).

"When assessing whether a plaintiff's alleged intent to return to a location is genuine, courts

consider the following factors: (1) the proximity of the accommodation to the plaintiff's

residence; (2) the plaintiff's past patronage of the accommodation; (3) the 'definiteness' of the

plaintiff's plans to return; and (4) the plaintiff's frequency of travel near the defendant." *Id*.

(citing *Miles v. Garland Lodge and Resort LLC*, 2017 WL 82973 at *2 (E.D. Mich., Jan. 10,

2017)).

Plaintiff's Amended Complaint, read broadly and in conjunction with the allegations of his

sealed filing, appears to address these factors both specifically and by reasonable inference. *See*

ECF No. 25 at ¶ 22 (close proximity to his residence); ¶ 19 (multi-year past patronage); ¶¶ 20-22,

26 (inference of desire to return). Accepting these allegations as true for purposes of resolving

the current motion to dismiss, Plaintiff has established the requisite threat of prospective injury

to seek injunctive relief against Defendants under Title III of the ADA. Consequently, the

Motion to Dismiss will not be granted on the basis of Plaintiff's lack of standing.

### 2. Failure to State A Claim Under ADA Title III

Title III of the ADA prohibits discrimination on the basis of disability in places of public

accommodation. 42 U.S.C. § 12182(a). Specifically, it states: "No individual shall be

discriminated against on the basis of disability in the full and equal enjoyment of the goods,

services, facilities, privileges, advantages, or accommodations of any place of public

accommodation by any person who owns, leases (or leases to), or operates a place of public

accommodation." 42 U.S.C. § 12182(a).

"Generally, '[a] person alleging discrimination under Title III must show (1) that he is

disabled within the meaning of the ADA, (2) that the defendant is a private entity that owns,

leases, or operates a place of public accommodation, (3) that the defendant took adverse action against the plaintiff that was based upon the plaintiff's disability, and (4) that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation.'" *Abeyta*, at *3 (quoting *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999)).[6]

Initially, as Plaintiff appears to concede,[7] and as this Court has previously held, the ADA does not provide a general federal cause of action to challenge the sufficiency of the medical treatment of an individual's underlying disabilities as Plaintiff has alleged here.[8] *Watson v. Mohr*, No. 2:17-CV-457, 2017 WL 6383812, at *5 (S.D. Ohio Dec. 14, 2017), *report and recommendation adopted,* No. 2:17-CV-457, 2018 WL 836484 (S.D. Ohio Feb. 13, 2018). Other courts have similarly held. *See, e.g., Bonds v. S. Health Partners, Inc.,* No. 2:15-CV-209-WOB, 2016 WL 1394528, at *6 (E.D. Ky. Apr. 6, 2016) (citing *Carrion v. Wilkinson*, 309 F. Supp. 2d 1007, 1016 (N.D. Ohio Mar. 10, 2004)) (holding ADA does not provide federal cause of action to challenge sufficiency of medical treatment of underlying disabilities); *see also*

---

[6] Other courts have condensed these elements and characterized a prima facie case as requiring the demonstration of three elements. *See, e.g., Snyder v. Lady Slings the Booze, LLC*, 73 F. Supp. 3d 871, 873–74 (W.D. Ky. 2014) ("To establish a prima facie case of Title III discrimination, a plaintiff must demonstrate that (1) he has a disability; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against him on the basis of his disability in the full and equal enjoyment of that place of public accommodation.")

[7] *See* ECF No. 30 at ¶¶ 3, 4.

[8] Under the circumstances here, the Court will assume, without deciding, that the Plaintiff's alleged condition meets the definition of disability as that term is set forth in the ADA. *See* 42 U.S.C. § 12102(1) (defining "disability" to include "being regarded as having" a "physical or mental impairment that substantially limits one or more major activities"). The Court expresses no opinion as to whether this is actually so.

*Kensu v. Rapelje*, No. 12-11877, 2015 WL 5302816, at *4 (E.D. Mich. Sept. 10, 2015)

("Defendant's conduct in response to Kensu's requests for dietary accommodation was medical

treatment. The ADA does not provide relief for alleged incompetent treatment."); *Royster v.*

*Mohr*, No. 11-CV-1163, 2013 WL 827709, at *9 (S.D. Ohio Mar. 6, 2013), *report and*

*recommendation adopted*, No. 2:11-CV-1163, 2013 WL 2404065 (S.D. Ohio May 31, 2013)

(citing *Baldridge–El v. Gundy,* No. 99–2387, 2000 WL 1721014, at *2 (6th Cir. Nov.8, 2000)

("medical treatment decisions, or alleged medical malpractice, cannot form the basis of a claim

under the ADA").

 Despite framing his claim as arising under the ADA, Plaintiff does not allege that he was

denied medical care because of his disability. Indeed, Plaintiff alleges in the Amended

Complaint that he sought and was provided Defendants' medical services specifically because of

his ADHD, *i.e.*, for maintenance of his medications. *See* Amended Complaint, ECF No. 16 at ¶

18; *see also Id.* at ¶ 21. ("After a little over 2 years of amicable but uneventful care in the clinic,

Plaintiff wanted to switch back to a medication and dosage he had taken previously for years

with good results but that change didn't go smoothly.") At best, Plaintiff alleges only the denial

of his medical treatment of choice. As the above discussion makes clear, however, neither

medical treatment decisions nor medical malpractice may form the basis of a claim under the

ADA. *Watson,* 2017 WL 6383812, at *5.

 Plaintiff's more specific reliance on Defendants' policies as the basis for an ADA Title

III claim is equally unavailing. *See* ECF No. 16 at ¶ 28. ("The discriminatory policies and

practices of the Clinic are what makes this an ADA violation that impacts him and anyone else that

has ADHD that is treated with stimulants that might want to join the Clinic, the medical mistreatment

is a symptom thereof.") The Court's starting point for its analysis of this issue is the applicable

definition of "discrimination."

Title III defines discrimination as appears would be relevant here[9] to include:

> (ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

42 U.S.C.A. § 12182(b)(2)(A)(ii).

As the United States Supreme Court has explained,

> the ADA was enacted to eliminate discrimination against "individuals" with disabilities, 42 U.S.C. § 12101(b)(1), and to that end Title III of the Act requires without exception that any "policies, practices, or procedures" of a public accommodation be reasonably modified for disabled "individuals" as necessary to afford access unless doing so would fundamentally alter what is offered, § 12182(b)(2)(A)(ii). To comply with this command, an individualized inquiry must be made to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person, and yet at the same time not work a fundamental alteration.

---

[9] In addition to ECF No. 16 at ¶ 28, *see also* ECF No. 16 at ¶¶ 9 (policies), 10 (policies), 11 (practices); ¶¶ 13-16 (discriminatory practices); ¶ 16 (failing to provide a reasonable accommodation).

The Court further notes that there is some indication in the Amended Complaint that Plaintiff also may be attempting to assert discrimination as defined by different provisions, including specifically 42 U.S.C.A. § 12182 (b)(2)(A)(i). *See* ECF No. 16 at ¶ 2. ("the Defendants' imposition or application of eligibility criteria that screen out, or tend to screen out, an individual with a disability or any class of individuals with disabilities from fully and equally enjoying the Defendants' goods, services, facilities, privileges, advantages, or accommodations.") Under that provision, discrimination is defined to include:

> (i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;

42 U.S.C.A. § 12182(b)(2)(A)(i). The Court does not consider any of Plaintiff's bare conclusory assertions as sufficient to be construed as attempting to state a claim beyond that based on a "reasonable modification" theory.

*PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001); *see also McNamara v. Ohio Bldg. Auth.*, 697 F. Supp. 2d 820, 829 (N.D. Ohio 2010) (citing *Martin* and explaining that "[w]hether the accommodation is necessary is a fact-based inquiry, and one where, in the Title III context, the Supreme Court has held requires "an individualized inquiry.")

At the same time, "the ADA's governing regulations 'regulate[ ] the availability of goods and services the place of accommodation offers as opposed to the contents of the goods and services offered by the public accommodation.'" *Love v. Omni Netherland Plaza Hotel*, No. C-1-00-700, 2001 WL 1842450, at *6 (S.D. Ohio May 10, 2001) (quoting *Parker v. Metropolitan Ins. Co.,* 121 F.3d 1006, 1012 (6th Cir. 1997)). That is, "the purpose of the ADA's accommodation requirements is to ensure accessibility to the goods and services offered, not to alter the goods and services themselves." *Id.*

With all of the above in mind, in considering a claim under a "reasonable modification" theory, courts consider whether the requested policy or practice modification (1) is reasonable, (2) is necessary for the disabled individual, and (3) would fundamentally alter the nature of the activity at issue. *Access Ctr. for Indep. Living v. WP Glimcher, Inc*., No. 3:15-CV-444, 2018 WL 2763453, at *4 (S.D. Ohio June 8, 2018) (citing *Martin*, 532 U.S. at 683 n.38). Plaintiffs bear the burden of proof for the first two elements, while defendants bear the burden for the third. *Id.* (citing *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059–60 (5th Cir. 1997). Once the plaintiff shows that the modification is reasonable and necessary, the defendant must make the modification unless it proves that doing so would alter the fundamental nature of the public accommodation. *Id.*

Applying these principles here, and assuming without deciding that Plaintiff adequately alleged the first two elements of an ADA Title III claim, Plaintiff's allegations of discrimination

fall short for several reasons. Most basically, while Plaintiff refers to Defendants' policies in the Amended Complaint, his discussion of these policies is quite limited and vague. He simultaneously describes them as "disparaging" "inapplicable to him" and as containing "mostly sensible precautions like having a patient be diagnosed, prescribed and stabilized on a treatment regimen by a psychiatrist before their care could be transferred to her for routine refills." ECF No. 16 at ¶ 20.[10] He seems to object to the fact that these policies initially were communicated to him via email with his condition identified generally in the subject line and to the subsequent publication of the policies on the Clinic's website. *Id.* at ¶¶ 19, 22. At the same time, he suggests that these policies were not followed with respect to him. *Id.* at ¶ 21. Overall, he offers nothing but his unsupported conjecture that Dr. Bartlett simply "decided she just didn't like treating people with ADHD." *Id.* In short, beyond conclusory assertions and his subjective interpretations, he does not offer any detailed connection between the alleged denial of his preferred medication and any particular policy.

More significantly, Plaintiff fails to identify with any specificity modifications to the Defendants' policies-- either that he requested or that are necessary to afford him ***access*** to the Defendants' services. In fact, as noted, the very basis of his Complaint is that he ***had*** access to Defendants' medical services-- he was an established patient – but, over time, he came to disagree with his course of treatment. To the extent that Plaintiff has alleged a modification request at all, it was a modification of the treatment services provided by Defendants, not a modification allowing for his access to those services. As the above authority demonstrates, however, that simply is not enough to bring Plaintiff's allegations within the purview of ADA

---

[10] Plaintiff's sealed filing contains slightly different allegations regarding his interpretations of the policy. *See* ECF No. 25 at ¶¶ 22, 23.

Title III.  *See Love,* 2001 WL 1842450, at *6 (S.D. Ohio May 10, 2001) ("the purpose of the ADA's accommodation requirements is to ensure accessibility to the goods and services offered, not to alter the goods and services themselves").  In short, the facts alleged here demonstrating what may well be Plaintiff's understandable frustration, do not fit within the confines of an ADA Title III claim.

For all of these reasons, to the extent that Plaintiff's Amended Complaint may properly be construed as asserting an ADA Title III claim, it fails to state a claim upon which relief can be granted.  Accordingly, the Motion to Dismiss is **GRANTED** as to any such claim.

### 3.  State Law Claims

Defendants also assert that, despite Plaintiff's characterization of his claim as arising under ADA Title III, his claim sounds clearly in medical malpractice.  Certainly, medical malpractice is a tort claim arising under Ohio, not federal law.  *Lambright v. Brogan*, No. 2:07CV0274, 2007 WL 2326879, at *1 (S.D. Ohio Aug. 10, 2007.)  As such, it does not create federal question jurisdiction.  *Id*.  Because federal courts are courts of limited jurisdiction, they can only exercise jurisdiction over cases to the extent authorized by Article III of the United States Constitution and by Act of Congress.  *Ransom v. Owens-Illinois, Inc.,* No. 2:14-CV-1845, 2014 WL 6606411, at *1 (S.D. Ohio Nov. 20, 2014), *report and recommendation adopted*, No. 2:14-CV-1845, 2014 WL 7184412 (S.D. Ohio Dec. 16, 2014).  Accordingly, the question is whether any other grant of jurisdiction would allow the Court to hear a medical malpractice claim presented under the circumstances of this case.

Article III of the Constitution does not allow federal courts to hear cases that involve, as plaintiffs and defendants, citizens of the same state if the legal claim involved in the case arises under state law.  *Lambright*, 2007 WL 2326879, at *1.  The relevant jurisdictional statute, 28

U.S.C. § 1332(a), states that "[t]he district courts shall have original jurisdiction of all civil

actions where the matter in controversy exceeds the sum or value of $75,000 ... and is between ...

citizens of different states ...."  *Id*.  This statute gives the Court power to hear what are called

"diversity" cases, meaning cases arising between citizens of different states. *Id.* If that is not the

situation here, the Court has no power to hear any medical malpractice claim.

According to the Amended Complaint, Plaintiff and the Defendants are citizens of Ohio.

As a result, diversity jurisdiction is lacking. For this reason, to the extent that Plaintiff's

Amended Complaint properly may be construed as asserting a medical malpractice claim, such a

claim is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction and without any

decision on its merits.

Finally, a review of the Amended Complaint suggests that Plaintiff may be attempting to

assert additional state law claims.  *See* ECF No. 16 at ¶¶ 2 and 21-23.   Defendants also have

moved to dismiss any such claims.

Supplemental jurisdiction exists "in any civil action of which the district courts have

original jurisdiction" where the state-law claims "are so related to claims in the action within

such original jurisdiction that they form part of the same case or controversy under Article III."

28 U.S.C. § 1387(a). *See also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724

(1966) (holding supplemental jurisdiction exists whenever state law and federal law claims

derive from the same nucleus of operative facts and when considerations of judicial economy

dictate having a single trial).

 A district court may decline to exercise supplemental jurisdiction over state court claims

in certain circumstances, including when "the district court has dismissed all claims over which

it has original jurisdiction." 28 U.S.C. § 1387(c)(3). *See Gibbs*, 383 U.S. at 726 (holding that if

federal claims are dismissed before trial, the state claims should be dismissed as well); *see also Rymer v. Lemaster*, No. 18-5655, 2019 WL 2583007, at *5 (6th Cir. Jan. 14, 2019), *cert. denied*, 140 S. Ct. 234 (2019) (holding that "the district court correctly declined to exercise supplemental jurisdiction over [the plaintiff's] state-law claims once his federal claims had been dismissed"). Because the Court dismisses any claim arising under federal law, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims as set forth in the Amended Complaint. *See* ECF No. 16 at ¶¶ 2 and 21-23. Accordingly, any such claims are **DISMISSED WITHOUT PREJUDICE**.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to file a Second Amended Complaint (ECF No. 30) is **DENIED.** Defendants' Motion to Dismiss (ECF No. 24) is **GRANTED as follows.** Plaintiff's claim under ADA Title III is **DISMISSED** for failure to state a claim upon which relief can be granted. To the extent that Plaintiff's claim more properly is construed as a medical malpractice claim, it is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction and without any decision on its merits. The Court declines to exercise supplemental jurisdiction over any other state law claims as may be set forth in ¶¶ 2 and 21-23 of the Amended Complaint and those claims are **DISMISSED WITHOUT PREJUDICE.**

Plaintiff's motions for appointment of counsel, including his request for review by the Attorney General (ECF No. 29, as supplemented by ECF No. 33, and ECF No. 34) are **DENIED.** Plaintiff's motion for a protective order (ECF No. 35) is **DENIED as moot**. This case is **DISMISSED**. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of the Defendants.

22

**IT IS SO ORDERED.**


                                                     */s/ Elizabeth A. Preston Deavers*

**DATED:  January 25, 2021**                 **ELIZABETH A. PRESTON DEAVERS**
                                         **UNITED STATES MAGISTRATE JUDGE**